UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**SERGIO GONZALES, SR.**,            Case Number 3:13 CV 2341

    Plaintiff,                           Magistrate Judge James R. Knepp II

    v.                                   MEMORANDUM OPINION AND ORDER

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

### INTRODUCTION

Plaintiff Sergio Gonzales, Sr. filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. § 405(g). The parties have consented to the exercise of jurisdiction by the undersigned in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 17). For the reasons given below, the Court affirms in part and remands in part the Commissioner's decision denying benefits.

### PROCEDURAL BACKGROUND

On December 9, 2010, Plaintiff filed for DIB alleging disability since January 1, 2009. (Tr. 127). Plaintiff's claims were denied initially (Tr. 81) and on reconsideration (Tr. 87). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 93). On February 9, 2012, Plaintiff (represented by counsel) and a vocational expert ("VE") testified at the hearing, after which the ALJ found Plaintiff not disabled. (Tr. 7-20, 21-63). On August 20,

2013, the Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-4); 20 C.F.R. §§ 404.955, 404.981. On October, 22, 2013, Plaintiff filed the instant case. (Doc. 1).

## FACTUAL BACKGROUND

*Plaintiff's Personal and Vocational Background*

Plaintiff was 42 years old at the time of his alleged disability onset date. (Tr. 127). Plaintiff attended school until the ninth grade and has not obtained a GED. (Tr. 25). Plaintiff has prior work experience as a meat-cutter. (Tr. 52-53). In terms of activities of daily living, Plaintiff prepared meals, washed dishes, took out the garbage, watched television, read the newspaper, and occasionally babysat his young grandchild. (Tr. 26-28, 168-170). Plaintiff was capable of self-care but said he struggled to get himself dressed and to wash his feet because of pain. (Tr. 169). Plaintiff drove himself to the hearing before the ALJ. (Tr. 25).

*Medical Evidence*

On January 28, 2010, Plaintiff saw Kathleen Grieser, M.D., complaining of back and knee pain. (Tr. 207). On examination, Plaintiff had normal straight-leg raising, strength, reflexes, no spine tenderness, and had minimal crepitus in his knees. (Tr. 208). X-rays revealed mild degenerative joint disease of the intervertebral and apophyseal joints and mild degenerative joint disease in both hips with minimal joint space narrowing in the left hip only. (Tr. 211). Plaintiff declined medication and indicated he did not want to do therapy. (Tr. 207, 209).

On February 12, 2010, Plaintiff was evaluated for physical therapy at Rehab Professionals of Cleveland. (Tr. 215). Plaintiff reported disturbed sleep and complained of only being able to sit for one hour. (Tr. 215). He displayed a limited range of trunk motion. (Tr. 215). Plaintiff was treated with exercise, electrical stimulation, and cold packs. (Tr. 216-25, 227-30).

2

Plaintiff underwent ongoing therapy until April 20, 2010 when he was discharged for having limited progress. (Tr. 231). Plaintiff's pain level had been reduced by fifty percent and it was advised that he continue at-home exercises. (Tr. 231).

Plaintiff was examined by Anita Groeschke, N.P., on July 12, 2010. (Tr. 333). Plaintiff appeared to be in mild to moderate pain with an antalgic gait. (Tr. 333). Examination of the lumbosacral area revealed no local tenderness or mass. (Tr. 334). Plaintiff had some painful and reduced range of motion of the lumbosacral spine, but deep tendon reflexes, motor strength, and sensation were normal, including heel and toe gait. (Tr. 334). Plaintiff's peripheral pulses were palpable. (Tr. 334).

On August 31, 2010, Plaintiff saw Raymond Hong, M.D., on the referral of Dr. Grieser for pain in his lower back, buttocks, and knees. (Tr. 256). Plaintiff reported continuous pain for over a year and pain levels that ranged from five to eight on a ten-point scale where ten is the most severe. (Tr. 256). On examination, Plaintiff had some tenderness in the S1 joints bilaterally, no synovitis, and a positive Shoeber's test. (Tr. 257). Plaintiff had no restriction in knee range of motion or knee effusion, but rotation of his hips caused radiation to the lower back with lower back pain. (Tr. 257). Plaintiff was diagnosed with low back pain and Dr. Hong indicated he suspected Ankylosing spondylitis with axial involvement and suggested Plaintiff have an MRI of the pelvis and lumbar spine. (Tr. 259). Dr. Hong prescribed continued pain medication management. (Tr. 259).

The MRI was taken September 13, 2010 and did not show sacrolitis, however it did show some facet arthropathy and disc bulging at L5-S1, but no nerve impingement. (Tr. 252) Plaintiff was referred to pain management and Dr. Hong indicated an anti-tumor necrosis factor ("anti-TNF") would be considered if there was still suspicion of Ankylosing spondylitis. (Tr. 252).

3

Plaintiff saw Vasantha Kumar, M.D., on September 29, 2010 for pain management consultation. (Tr. 245-52). Plaintiff indicated his pain was eight on a ten-point scale and interfered with his daily activities fifty percent of the time. (Tr. 247). On examination, degenerative changes of the lumbar spine were noted, most prominently at the L4-L5 and L5-S1 levels. (Tr. 248). Examination of the lumbosacral spine revealed no tenderness or mass, mild facet tenderness, and myofascial spasm without trigger points. (Tr. 249). Plaintiff's motor strength was 5/5 in his limbs, his sensory examination was intact to touch and pin prick sensation, and his straight-leg raising test was negative but Plaintiff had a painful range of motion on lateral rotation. (Tr. 249). Dr. Kumar recommended continued home exercises, a TENs unit trial for home use, continual non-steroidal anti-inflammatory drugs, and a trial of lumbar epidural steroid injections. (Tr. 249). These injections provided limited, temporary relief. (Tr. 240-45, 285, 289-95).

Plaintiff returned to Dr. Hong on February 11, 2011. At this time, Dr. Hong diagnosed Ankylosing spondylitis with axial features and possible enthesopathy. (Tr. 297). Dr. Hong noted an inadequate response to pain medication and injection therapy and prescribed Enbrel, an anti-TNF. (Tr. 297). Imaging studies showed multi-site degenerative changes although only the lumbosacral spine had changes that were more than minimal. (Tr. 363-65).

Plaintiff saw Dr. Hong for a follow-up visit on May 27, 2011. (Tr. 284-89). On examination, Plaintiff had lumbar spine expansion, ten to thirteen centimeters, synovitis of bilateral metacarpophalangeal and right proximal interphalangeal joints with tenderness, tender low back and S1s, tender left hip with flexion and rotation, and small effusion of the right knee. (Tr. 286). Plaintiff had declined to start Enbrel due to concern about adverse effects and wanted to explore an orthopedic evaluation prior to making a decision. (Tr. 288).

4

On June 8, 2011, Plaintiff saw Jeffrey Kirschman, M.D., for an orthopedic consultation. (Tr. 279-84). Dr. Kirschman reviewed the x-rays which revealed adequate joint spacing, no signs of degenerative disc disease in the lumbar spine, but mild arthritis was present. (Tr. 281). Dr. Krischman said there was no surgical intervention that could be offered and he did not recommend injections, rather he concurred with Dr. Hong that Enbrel was Plaintiff's best option. (Tr. 281).

Plaintiff returned to Dr. Hong on November 3, 2011. (Tr. 378). Dr. Hong noted Plaintiff stopped Enbrel because of nausea, emesis, and headache. (Tr. 378). Plaintiff reported he had had elbow pain for the past four weeks in addition to his chronic knee, hip, and back pain. (Tr. 378). Dr. Hong recommended injections for epicondylitis, and suggested trying a different anti-TNF, either Remicade or Humira, instead of Enbrel. (Tr. 380). Plaintiff saw Dr. Hong again on December 29, 2011, after he had taken two Humira injections. (Tr. 374). Plaintiff had developed blisters on his nostril, chin, and right armpit which he attributed to adverse effects from Humira. (Tr. 374).

*Opinion Evidence*

State agency physicians, Gerald Klyop, M.D. and William Bolz, M.D., reviewed the evidence of record. (Tr. 64-70, 72-79). Both physicians opined Plaintiff could lift or carry up to twenty pounds occasionally and ten pounds frequently; could sit for six hours of an eight-hour workday; and could stand and/or walk for six hours of an eight-hour workday. (Tr. 64-70, 72-79). They also indicated Plaintiff could frequently climb ramps or stairs, and occasionally balance, stoop, kneel, crouch, crawl, and climb ladders, ropes, or scaffolds. (Tr. 64-70, 72-79). They further opined Plaintiff should avoid concentrated exposure to hazards, such as unprotected heights and moving machinery. (Tr. 64-70, 72-79).

On March 13, 2012, Kimberly Togliatti-Trickett, M.D., performed a consultative evaluation of Plaintiff. (Tr. 382-84). On examination, Plaintiff was independent with the ability to sit and stand without limitation, his gait was within normal limits without the use of a cane, and he did not need support for ambulation. (Tr. 383). Plaintiff ambulated normally on his heels but walked on his toes due to complaints of pain in the lower spine. (Tr. 383-84). Plaintiff had mild tenderness with palpation over the lumbar spine, squatting and rising were limited due to complaints of pain in the spine, and his range of motion was limited due to pain in that region. (Tr. 384). Plaintiff's cervical spine range of motion showed functional mobility in all planes, his active range of motion was within functional limits in all four extremities with the exception of the shoulders bilaterally due to pain. (Tr. 384). Very gentle passive range of motion to the right shoulder caused an increase in pain but improved motion. (Tr. 384). Dorsalis pedis pulses were 2+ bilaterally and no lower extremity edema was present. (Tr. 384). Inspection of the joints of the hands, wrist, elbows, knees, and ankles did not reveal joint erythema, effusion, tenderness, or abnormalities. (Tr. 384). Neurological examination was unremarkable. (Tr. 384).

Dr. Togliatti-Trickett's impression was that Plaintiff had rheumatoid arthritis and Ankylosing spondylitis. (Tr. 384). Dr. Togliatti-Trickett opined that Plaintiff was limited in all functional activities due to his subjective complaints of pain and that these subjective complaints outweighed physical exam findings. (Tr. 384). Dr. Togliatti-Trickett indicated Plaintiff could lift or carry between twenty and 50 pounds never to occasionally, could lift up to twenty pounds occasionally to frequently, and could lift less than ten pounds frequently. (Tr. 389). Plaintiff could sit, stand, or walk for up to three hours in an eight-hour workday but Plaintiff could only stand for up to 30 minutes at a time, and walk for up to 45 minutes at a time. (Tr. 390). Plaintiff could frequently balance, but only occasionally stoop, kneel, crouch, crawl, and climb ladders,

6

ropes, scaffolds, and stairs. (Tr. 392). Plaintiff could have frequent exposure to unprotected heights and moving parts but that exposure could not be continuous. (Tr. 393).

*VE Testimony*

Kathleen Rice, VE, testified at the hearing before the ALJ. (Tr. 51). The ALJ asked the VE about a hypothetical person with the same vocational background as Plaintiff, who was able to lift and carry ten pounds occasionally; stand and walk for two hours and sit for six with an option to sit/stand every hour for five minutes; who could occasionally climb stairs and ramps, bend and balance but not kneel or crawl; could frequently reach out in front of himself and occasionally reach overhead; and could handle, finger, and feel but must not be exposed to any hazardous conditions. (Tr. 58). The VE opined that such a person could find work as a food and beverage order clerk, charge account clerk, and document preparer. (Tr. 59).

Next, the ALJ asked the VE whether such work would still be available for such a person if they used a cane, and the VE indicated that such a person would not be able to perform parts of the job, and thus could not work fast enough to keep the job. (Tr. 59). Then, Plaintiff's attorney asked the VE how many absences such positions would tolerate per week. (Tr. 61). The VE responded that a number of absences per week would not be tolerated, the most that would be tolerated is half a day absence per month or six absences per year. (Tr. 61-62).

*ALJ's Decision*

On June 12, 2012, the ALJ found Plaintiff had the severe impairments of Ankylosing spondylitis, lumbar degenerative disc disease, and left lateral epicondylitis. (Tr. 12). The ALJ found Plaintiff's impairments considered singly and in combination did not meet or equal a listed impairment. (Tr. 13). The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of sedentary work. (Tr. 13). Plaintiff could lift up to ten pounds, sit

7

six hours of an eight-hour workday, and could stand or walk for two hours of an eight-hour workday. (Tr. 13). Further, Plaintiff could occasionally bend, balance, and climb ramps or stairs, but could never kneel or crawl, and could handle, finger, and feel but could frequently but not continuously reach in front and only occasionally reach overhead. (Tr. 13). Plaintiff must avoid all hazards. (Tr. 13).

In making this finding, the ALJ found reason to doubt Plaintiff's credibility in the overall severity of his symptoms because objective findings and treatment were inconsistent with the severity of Plaintiff's symptoms. (Tr. 14). The ALJ found based on Plaintiff's vocational background, RFC, and the VE testimony, Plaintiff could find work as a food and beverage order clerk, charge account clerk, or document preparer. (Tr. 15-16). Thus, the ALJ found Plaintiff was not disabled. (Tr. 16).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court

cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. §§ 423(a); 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.*

9

Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff asserts the ALJ erred (1) in finding Plaintiff's impairments did not meet or equal the severity requirements of any of the listings in step three; and (2) because her decision, particularly its credibility finding, is not supported by substantial evidence. (Doc. 18, at 7, 14). Each of these arguments will be addressed in turn.

*The ALJ's Step Three Analysis*

Plaintiff claims the ALJ erred at step-three of the sequential analysis by failing to consider whether her severe physical impairments met or medically equaled listing 14.09 (D). (Doc. 18, at 14).

The listing of impairments is used at the third step of the disability determination process to determine whether a claimant is disabled. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). If a claimant meets the requirements of a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 416.926(a). If not, the sequential evaluation process continues and the ALJ must determine whether a claimant's impairment or combination of impairments is the "medical equivalence" of a listed impairment. *Id*. An impairment is equivalent to a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." *Id*. An ALJ must compare medical evidence with the requirements for listed impairments at step three. *Id.*; *May v. Astrue*, 2011 WL 3490186, at *7 (N.D. Ohio 2011).

At step-two, the ALJ determined Plaintiff had the severe impairment, Ankylosing spondylitis because it "pose[d] more than minimal limitations upon the [Plaintiff's] ability to perform work-related activity." (Tr. 12). At step-three, the ALJ summarily stated, "[t]he [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1". (Tr. 13). In his step-three analysis, the ALJ referenced Plaintiff's lumbar degenerative disc disease, but did not discuss his Ankylosing spondylitis or otherwise discuss inflammatory arthritis. (Tr. 13-14). Rather, he only considered whether Plaintiff's lumbar degenerative disc disease, considered singly and in combination with Plaintiff's other impairments, met or medically equaled the criteria of listing 1.04 for disorders of the spine. (Tr. 13).

There is no "heightened articulation standard" in considering the listing of impairments; rather, the court considers whether substantial evidence supports the ALJ's findings. *Snoke v. Astrue*, 2012 WL 568986, at *6 (S.D. Ohio 2012) (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)). However, the court must find an ALJ's decision contains "sufficient analysis to allow for meaningful judicial review of the listing impairment decision." *Snoke*, 2012 WL 568986, at *6 (citing *Reynolds*, 424 F. App'x at 415-16); *see also May*, 2011 WL 3490186, at *7 ("In order to conduct a meaningful review, the ALJ's written decision must make sufficiently clear the reasons for his decision."). The court may look to the ALJ's decision in its entirety to justify the ALJ's step-three analysis. *Snoke*, 2012 WL 568986, at *6 (citing *Bledsoe*, 165 F. App'x at 411).

Where, as here, the ALJ failed to compare a severe impairment to the listings, this District has remanded for further analysis. *See, e.g., May*, 2011 WL 3490186, at *10 ("The ALJ was required to evaluate [the evidence], compare it to Section 1.00 of the Listing, and give an

11

explanation, in order to facilitate meaningful review. Otherwise, it is impossible to say that the ALJ's decision at step three was supported by substantial evidence."); *Hunter v. Astrue*, 2011 WL 6440762, at *4 (N.D. Ohio 2011) ("Because the ALJ failed to conduct a meaningful review of the record evidence of Plaintiff's severe back impairment in relation to the relevant Listed Impairment, the Court . . . remands for a more thorough step three determination."); *Marok v. Astrue*, 2010 WL 2294056, at *4 (N.D. Ohio 2010) (remanding where it was impossible for the court "to ascertain whether the ALJ considered criteria such as the disabling effects of obesity" on the claimant's condition because the ALJ only summarily cited a medical expert's opinion at step three).

> Listing 14.09 (D) provides for a disability finding when a claimant has:
>
> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> > 1. Limitation of activities of daily living.
> > 2. Limitation in maintaining social functioning.
> > 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. § 404, Subpt. P, App. 1.

Here, the Commissioner argues that "diagnostic findings documented only 'mild' facet degenerative arthritis. (Tr. 364). Therefore, the ALJ was not required to evaluate whether Plaintiff met or equaled listing 14.09 (D)." (Doc. 19, at 8).

However, Ankylosing spondylitis is "a form of degenerative joint disease that affects the spine. It is a systemic illness. . . producing pain and stiffness as the result of inflammation of the

sacroiliac, intervertebral, and costovertebral joints".[1] Its systemic nature can lead to symptoms beyond pain at the actual site. Hence while Plaintiff's lumbar degenerative disc disease is included in listing 1.04 for disorders of the spine, Ankylosing spondylitis is enumerated in the 14.00 listings for inflammatory arthritis. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §§ 1.04, 14.00(D)(6), 14.09. Therefore, by not discussing the 14.09 listings, the ALJ failed to compare one of Plaintiff's severe impairments, Ankylosing spondylitis, to the listings.

The Commissioner tacitly raises a harmless error argument as discussed in *Rabbers*. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). In *Rabbers*, the ALJ evaluated the claimant's bipolar disorder under listing 12.04, but failed to provide a complete analysis by leaving out discussion of the listing's paragraph "B" criteria. *Id*. Although the ALJ's omission at step three was error, the Sixth Circuit found it harmless because there was insufficient evidence in the record to show the claimant met any of the paragraph "B" criteria. *Id*. at 658-61. Therefore, even if the ALJ had analyzed the paragraph "B" criteria, his step-three conclusion would not have changed. *Id*. However, the court cautioned other courts engaged in a step-three harmless error review against similarly affirming if the record contains "conflicting or inconclusive evidence relating to the [listing]." *Id*. at 657-58.

This case is not susceptible to harmless error analysis. In contrast to *Rabbers*, here the ALJ did not simply omit a discussion of a portion of the listing, rather the ALJ failed to compare Ankylosing spondylitis to the listings at all. Of particular concern, is the ALJ's failure to consider the systemic nature of Ankylosing spondylitis. The ALJ's opinion contains no findings with respect to whether Plaintiff had any of the required constitutional symptoms, or whether his ability to maintain social functioning or ability maintain concentration, persistence, or pace were

---

1. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1779 (31st ed. 2007).

at all limited. (Tr. 10-17). Thus, the ALJ's decision does not provide sufficient analysis to allow for meaningful review of her step-three determination. Expressing no opinion on the outcome of the analysis, the case is remanded for further analysis of Plaintiff's impairments at step-three.

*Credibility*

Plaintiff asserts the ALJ erred in evaluating his credibility. (Doc. 18, at 7). Specifically, Plaintiff argues the ALJ erred in using the gap between his subjective complaints and objective medical findings to diminish his credibility and in finding that he had not had the type of treatment one would expect a totally disabled individual to have. (Doc. 18, at 7-14).

A claimant's subjective complaints can support a claim for disability, but there must also be objective medical evidence in the record of an underlying medical condition. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). Further, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476 (citations omitted). On review, the Court is to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Id.* (citation omitted). Still, an ALJ's decision to discount a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling (SSR) 96-7p, 1996 WL 374186, *2. In reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [Plaintiff's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476.

14

An ALJ is not bound to accept as credible Plaintiff's testimony regarding symptoms. *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992). Analysis of alleged disabling symptoms turns on credibility. *See Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004). "Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms (especially pain) are difficult to prove, disprove, or quantify." SSR 82-58, 1982 WL 31378, *1. In evaluating credibility an ALJ considers certain factors:

> (i) [A claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [] pain or other symptoms;
>
> (v) Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [] pain or other symptoms;
>
> (vi) Any measures [the claimant] ha[s] used to relieve pain or other symptoms; and
>
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3).

The ALJ evaluated Plaintiff's credibility as follows:

> For several reasons, the claimant's impairments support the limitations contained within the above residual functional capacity as opposed to total disability.
>
> First, the objective findings are inconsistent with his allegations regarding the severity of his symptoms. His workup included a lumbar MRI, which documented multilevel degenerative changes, most prominent at L4-5 and L5-S1, and lumbar x-rays, which documented "mild" facet degenerative arthritis and "mild" degenerative joint disease of the intervertebral and apophyseal

15

joint s (Exhibit 3F/ 15, 4F/90, 96). Furthermore, while some physical examinations revealed left lateral epicondyle tenderness, "mild" facet tenderness, SI joint tenderness, myofascial spasms, a painful range of motion, and an antalgic gait, others revealed normal strength, normal reflexes, intact sensation, a lack of spinal tenderness, and a negative straight leg-raising test (Exhibits lF/8, 3F/ 15, 16, 24, 4F/7, 5F/7).

Second, he has not received the type of treatment one would expect for a totally disabled individual. To date, he has maintained a medication regimen consisting of Meloxicam, Cyclobenzaprine, Amitriptyline, and Hydrocodone, has attempted physical therapy, has utilized TENS unit, and has undergone injection therapy (Exhibits 2F, 3F/7, 8, 13, 4F/ 11, 18, testimony). However, he has not attempted surgical intervention, which also suggests his symptoms are not as severe as alleged.

Third, his activities indicate he retains the capacity to perform work within the above residual functional capacity. As evidenced by the record, he cooks meals, washes dishes, takes out the trash, drives, shops, runs errands, and occasionally babysits his young grandchild (Exhibits 4E, testimony).

Furthermore, one other factor also lessens his overall credibility. Upon examining the claimant, consultative examiner Kimberly Togiliatti-Trickett, M.D. noted that his subjective complaints outweighed his physical exam findings, suggesting he embellishes the severity of his symptoms (Exhibit 6F/3).

(Tr. 14).

From this, it is clear that, in determining Plaintiff's credibility the ALJ considered the factors in 20 C.F.R. § 404.1529(c)(3). Specifically, the ALJ concluded that because medical objective findings were not consistent with Plaintiff's pain level, Plaintiff's treatment amounted mostly to pain medications and outpatient procedures, and Plaintiff was able to complete many activities in daily living without assistance, his pain levels were likely exaggerated. (Tr. 14, 26-28, 168-70, 211, 245-52, 249, 256, 257, 334, 384, 380, 386).

Plaintiff argues the ALJ erred by considering his medical objective findings against his credibility. (Doc. 18, at 8). Plaintiff cites to *Jones v. Secretary of H.H.S.*, 945 F. 2d 1365, 1369-70 (6th Cir. 1991) for the proposition that rejecting a claimant's statements on this basis is

expressly prohibited. (Doc. 18, at 8). However, the *Jones* case does not support this contention; rather *Jones* found error, in part, because the ALJ ignored objective findings such as muscle atrophy and muscle spasms which indicated the claimant was in intense pain. 945 F. 2d at 1369-70.

Plaintiff further argues the ALJ erred by not evaluating the entire record as required by SR 96-7p. (Doc. 18, at 8-10). Specifically, he argues the "consistency" of his statements to health care providers was not considered by the ALJ. (Doc. 18, at 10). Further, he alleges the ALJ improperly held the fact that he had not had surgery against him, when in fact no surgery was available for his condition. (Doc. 18, at 10-11). Additionally, Plaintiff asserts the ALJ should not have found him "not disabled" simply because he is able to perform some activities of daily living. (Doc. 18, at 11-12). He argues the ALJ misinterpreted Dr. Togliatti-Tricket's statement that "subjective complaints outweighed his physical exam findings", to mean Plaintiff embellishes his symptoms. (Doc. 18, at 12-13).

The ALJ did not rely upon any one of these bases in isolation, but, rather, considered each of them together. Taken as a whole, Plaintiff's relatively mild objective findings, his limited treatment of his condition, and his ability to still perform many activities of daily living provide substantial evidence for the ALJ to determine that Plaintiff's statements regarding the severity of his symptoms are not fully credible. Accordingly, the ALJ's evaluation of Plaintiff's credibility is affirmed.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the Commissioner's determination regarding Plaintiff's credibility is affirmed. However, the Court

finds the ALJ's decision unsupported by substantial evidence to the extent the Commissioner failed to compare Plaintiff's Ankylosing spondylitis to the relevant listing at step three. Accordingly, this matter is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

    IT IS SO ORDERED.


                    s/James R. Knepp II
                    United States Magistrate Judge